* Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4539 | **DATE** | 4/12/2004 |
| **CASE TITLE** | Dr. Robert Steinberg vs. Railroad Maintenance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Fund's Rule 56 motion must of course be denied. Dr. Steinberg's Rule 56 motion, under the circumstances and for the reasons just stated in the preceding section of this opinion he is entitled to a judgment as a matter of law. Fund is ordered to pay Dr. Steinberg the disputed sum of $6,650.00.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 1 3 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 9 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 4/12/2004 date mailed notice | |
| SN | courtroom deputy's initials | SN mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. ROBERT I. STEINBERG, D.P.M., )
LTD., etc., )
)
Plaintiff, )
)
v. ) No. 03 C 4539
)
RAILROAD MAINTENANCE AND INDUSTRIAL )
HEALTH AND WELFARE FUND, )
)
Defendant. )

MEMORANDUM OPINION AND ORDER

Dr. Robert I. Steinberg has brought this action against Railroad Maintenance and Industrial Health and Welfare Fund ("Fund") under the Employee Retirement Income Security Act ("ERISA"), more specifically 29 U.S.C. §§1132(a)(1)(B).[1] Dr. Steinberg claims that Fund improperly refuses to pay him for diagnostic testing that he performed on his patient Aurora Aceves ("Aceves"), who is a participant in Fund's health plan ("Plan"). Dr. Steinberg also claims that Fund failed to provide a full and fair review of his claim as required by Section 1133.

Both sides have moved for summary judgment, providing a joint appendix with the relevant exhibits.[2] For the reasons stated hereafter, this Court grants Dr. Steinberg's motion,

---

[1] All further citations to Title 29 provisions will simply take the form "Section --."

[2] Especially in view of the small amount in controversy, this Court has excused both parties from having to comply with the burdensome (and hence expensive) requirements of this District Court's LR 56.1.

denies Fund's motion and orders Fund to pay Dr. Steinberg $6,650, the amount at issue.

## Background

Although Aceves was first diagnosed with diabetes in 1984, she had permitted it to go untreated for years before she came under the care of podiatrist Dr. Steinberg beginning around 1999 (Ex. A at 25, 144). Aceves had then lost much of the sensation in her feet and had developed ulcerations (id. at 120) for which Dr. Steinberg had provided treatment. On October 5, 2002 Aceves came to see Dr. Steinberg because she had been having shooting pains and strange tingling sensations in her feet and upper extremities (id. at 48). Because Dr. Steinberg's ensuing examination and findings[3] led him to make a preliminary diagnosis of neuropathy (nerve damage)--a common complication of diabetes that can increase the likelihood of amputation if untreated[4]--on October 12 Dr. Steinberg ordered and supervised a nerve conduction study and then sought payment for the testing from Fund (id. at 50-52). Fund solicited an independent medical

---

[3] Ex. 1 to this opinion is a more detailed account (drawn from his counsel's Mem. 2-3) of Dr. Steinberg's diagnosis and procedures that led him to order the testing now at issue. With each party having elected not to respond to the other's opening submission, that account is uncontroverted, and Fund's rejection of the present claim is to be considered in that light.

[4] For a general description of neuropathy and other typical diabetes complications, see http://www.diabetes.org/type-1-diabetes/nerve-damage.jsp.

review, and the board-certified orthopedic surgeon who reviewed Aceves' information found that the neurological testing "was not medically indicated" and therefore unnecessary (id. at 138).

On February 21, 2003 Fund sent Aceves and Dr. Steinberg a letter denying the claim (Ex. A at 91). Dr. Steinberg requested an appeal, and Fund resubmitted the claim to another reviewer at the same company as before--this time a board-certified neurologist--who concluded that "there is insufficient medical documentation to establish any of the ordered, performed, and interpreted electrophysiology studies were medically necessary," although the neurologist looked at no medical documentation other than the earlier doctor's report and a one-page certificate of medical necessity that Dr. Steinberg had submitted (id. at 126-27)--no review of any of the underlying medical records was undertaken by the neurologist.

At Fund's April 17, 2003 Board of Trustees meeting the Board denied Dr. Steinberg's appeal (Ex. A at 156). Dr. Steinberg sought reconsideration of the Board's decision, but Fund refused (id. at 142-43). Dr. Steinberg then timely brought this action.

### Summary Judgment Standard

Familiar Rule 56 principles apply to cross-motions for summary judgment just as they would to a garden-variety summary judgment motion (Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002)).

Summary judgment is proper if the record demonstrates that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law (id.). Taking each motion separately, this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). If the trier of fact could return a verdict for the nonmoving party, the summary judgment motion should be denied (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)).

### Standard of Review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) teaches:

> Consistent with established principles of trust law, we hold that a denial of benefits under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Where the plan grants discretionary authority--and the Plan here undisputedly does so--this Court reviews an administrator's or fiduciary's decision using the "arbitrary and capricious" standard (Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 773 (7th Cir. 2003)). Hackett, id. at 774 explains that although arbitrary-and-capricious review is deferential, it "is not a rubber stamp and deference need not be abject." Trombetta v. Cragin Fed. Bank for Savings Employee

4

Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir.
1996)(internal quotation marks and ellipses omitted) describes
the standard this way:

> A decision is arbitrary or capricious only when the
> decisionmaker has relied on factors which Congress has not
> intended it to consider, entirely failed to consider an
> important aspect of the problem, offered an explanation for
> its decision that runs counter to the evidence, or is so
> implausible that it could not be ascribed to difference in
> view or the product of expertise.

### Medical Necessity

Section 1132(a)(1)(B) permits a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." As an assignee of Aceves' rights, Dr. Steinberg assumes the role of beneficiary and can properly bring a claim under that section for covered Plan benefits (Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 863 (7th Cir. 1999)).

Dr. Steinberg contends that the neurological testing he performed on Aceves was medically necessary and thus should have been covered by the Plan. Fund responds that the medical records submitted with the claim did not adequately demonstrate that the procedure was needed. Under the Plan, "necessary treatment" is defined as "medical treatment which is consistent with currently accepted medical practice" (Ex. B at 12). And not surprisingly, "[i]t is well established that it is the language of an ERISA

5

plan that controls" (<u>Cozzie v. Metropolitan Life Ins. Co.</u>, 140 F.3d 1104, 1109 (7th Cir. 1999)).

Dr. Steinberg argues that publications from the National Institute of Health and the American Diabetes Association demonstrate that the testing he performed was consistent with currently accepted medical practice. Fund, on the other hand, claims that its decision was reasonable because two board-certified physicians reviewed Aceves' medical records (at least those portions that were provided to Fund) and both concluded that the treatment was not medically indicated and was unnecessary.

At this stage of the parties' dispute, this Court cannot determine as a matter of law that Fund's substantive determination was so implausible or so inadequately supported (or so unsupported) that it was arbitrary and capricious. To make such a ruling this Court would have to engage in medically-related findings and conclusions that it is not equipped to make at this summary judgment stage, which requires the adoption of a dual perspective as to permissible inferences that this Court has sometimes referred to as Janus-like.

## Full and Fair Review

Even though a genuine issue thus exists over the merits of Fund's decision, Dr. Steinberg is still entitled to summary judgment if the record demonstrates that Fund's evaluation of his

claim was so procedurally flawed that he did not receive a full and fair review. As Hackett, 315 F.3d at 775 has more recently quoted from Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688-89 (7th Cir. 1992):

> ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for "full and fair review" by the administrator.

Militello v. Central States, S.E and S.W. Areas Pension Fund, 360 F.3d 681, 690 (7th Cir. 2004) repeats the earlier statement in Halpin, 962 F.3d at 689 (quoted in turn from earlier precedent) as to what "full and fair review" entails:

> The persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

29 C.F.R. §2560.503-1[5] has been promulgated as a regulation pursuant to Section 1133 to elaborate on what employee benefit plans must do to satisfy ERISA's procedural requirements. Specifically addressing "full and fair review," Reg. §503-1(h)(2) and (3) provide that the claims procedures "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" unless certain procedures are met, including:

---

[5] Subparts of that regulation are cited simply "Reg. §503--," eliminating the need to repeat "29 C.F.R. §2560."

> Provide that a claimant will be provided, upon request
> and free of charge, reasonable access to, and copies
> of, all documents, records, and other information
> relevant to the claimant's claim for benefits...; [Reg.
> §503-1(h)(2)(iii)]
>
> Provide for a review that takes into account all
> comments, documents, records, and other information
> submitted by the claimant relating to the claim,
> without regard to whether such information was
> submitted or considered in the initial benefit
> determination. [Reg. §503-1(h)(2)(iv)]
>
> \*     \*     \*
>
> Provide that, in deciding an appeal of any adverse
> benefit determination that is based in whole or in part
> on a medical judgment, including determinations with
> regard to whether a particular treatment...is...not
> medically necessary or appropriate, the appropriate
> named fiduciary shall consult with a health care
> professional who has appropriate training and
> experience in the field of medicine involved in the
> medical judgment; [Reg. §503-1(h)(3)(iii)]
>
> Provide for the identification of medical or vocational
> experts whose advice was obtained on behalf of the plan
> in connection with a claimant's adverse benefit
> determination, without regard to whether the advice was
> relied upon in making the benefit determination; [Reg.
> §503-1(h)(3)(iv)]
>
> Provide that the health care professional engaged for
> purposes of a consultation under paragraph (h)(3)(iii)
> of this section shall be an individual who is neither
> an individual who was consulted in connection with the
> adverse benefit determination that is the subject of
> the appeal, nor the subordinate of any such individual.
> [Reg. §503-1(h)(3)(v)].

All of those or substantially similar requirements were expressly adopted in the Plan's Summary Plan Description (Ex. B at 44-45).

Halpin, 962 F.2d at 690 reconfirms that substantial compliance with that regulation is sufficient. But in this

8

instance Fund's procedures did not comply substantially in a number of respects.

For one thing, Fund did not identify the physicians who reviewed Aceves' files--it simply listed the doctors anonymously as a board-certified neurologist and a board-certified orthopedic surgeon. Without more information, Dr. Steinberg had no opportunity to challenge whether those experts were qualified to make the medical-necessity determination under the circumstances, and he was certainly entitled to that information under the regulations and the Plan.

But that is not all. Fund submitted Aceves' records for a second review to the same company that reviewed those records the first time around, and the same medical director signed off on both reviews. That is really insufficient to call the second review "independent" or to meet the requirements of full and fair review. Even more significantly, according to the second reviewer's own report he or she did not even review Aceves' medical record when deciding whether that record was sufficient to show medical necessity. Instead that reviewer appears to have relied on the earlier case review to make that determination. That failure of the second reviewer to take into account the entire record when making his or her decision makes it fatally deficient. And lastly, Fund never notified Dr. Steinberg (or Aceves) that copies of all pertinent documents were available

9

upon request.

Again, all of those deficiencies certainly demonstrate that Fund did not substantially comply with its statutory and regulatory obligations. And that in turn compels resolution of the current cross-motions in Dr. Steinberg's favor.

### Appropriate Remedy

This Court is of course aware of the general proposition that where a plan administrator has not afforded adequate procedures in denying benefits, the remedy most often afforded is to compel the administrator to provide the claimant with the proper procedures (see, e.g., Hackett, 315 F.3d at 776 and Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 464 (7th Cir. 2001)). But as those cases themselves demonstrate, that remedy is not the inexorable result of a ruling adverse to the plan administrator. And if this Court may be pardoned a bad pun, in this case that prescription would be bad medicine.

Here the parties are battling over a grand sum that is less than $7,000, in an area of law in which it is the easiest thing in the world for a plan fiduciary to make judgments that are invulnerable to attack. Firestone Tire has provided a formula for the virtually total insulation of those judgments, and the statute and regulations have marked out a path that is extraordinarily easy to follow to invoke such insulation. Yet here Fund has forced Dr. Steinberg and his counsel into the

courts through a disregard of its responsibilities, a deviation from that path, by calling into play the ipse dixit conclusory statements from anonymous reviewers (at least one of whom lacked the requisite independence) in violation of the statutory and regulatory requirements.

"Fiduciary" is a term of art in the law. Firestone itself drew expressly and deeply on principles of trust law in its analysis (489 U.S. 110-15). And on that score the classic articulation continues to be the famous statement by Justice (then Chief Judge) Benjamin Cardozo in Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1929):

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate.

Where as here the fiduciary has breached its obligations toward its beneficiary in the manner described in this opinion, and has done so where the stakes are so low as to discourage a challenge to its decision, the most appropriate remedy--one that comports with equity, just as the courts of chancery have traditionally supplied the forum for enforcing the law of trusts--is to grant Dr. Steinberg the modest relief that he seeks, instead of forcing him to undergo further delay and expense.

## Conclusion

In sum, this Court finds as a matter of law that Fund failed to provide a full and fair review when it did not substantially comply with Reg. §503-1(h)(2) and (3). Fund also failed to follow its own rules as outlined in the Plan. Hence Funds' rule 56 motion must of course be denied. As for Dr. Steinberg's Rule 56 motion, under the circumstances and for the reasons just stated in the preceding section of this opinion he is entitled to a judgment as a matter of law. Fund is ordered to pay Dr. Steinberg the disputed sum of $6,650.

Milton I. Shadur
Senior United States District Judge

Date: April 12, 2004

*Facts*

At the time care was rendered, the Patient was insured by her employer for medical benefits under a health care plan ("the Plan") administered by the Defendant, RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND WELFARE FUND, and governed under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001-1461 ("ERISA"). A copy of the Plan is attached hereto as Exhibit B.

The Patient is a 56 year old female who has been diabetic since 1984 with a poor medical history and no real physician. *See* Exhibit A, BS 00001, 25, 48, 84. On October 5, 2002, and October 12, 2002, the Patient presented herself to the Plaintiff for podiatric care. The Patient had a deep diabetic infection on her right foot. *See* Exhibit A, BS 000013, 29-33, 35-6, 48. Upon further examination, the Plaintiff learned that the Patient had been experiencing tingling and shooting pain in her feet and complained of numbness. *See* Id. at BS 000047-8, 000120, 000144. The Plaintiff then evaluated the temperature, pulse and muscle strength in both feet concluding that the Patient's feet were clammy to the touch, had a pulse of +2, decreased muscle strength, and decrease in sensation toward the ends of her feet. Id. at BS 000047-8. The Plaintiff's notes also indicated signs of positive tinels and possible tarsel tunnel syndrome. Id. All of this information led the Plaintiff to make a preliminary diagnosis of neuropathy – diabetic neuropathy is a common, but serious complication affecting diabetic patients increasing the likelihood of amputation. The Plaintiff concluded that it was medically necessary to perform neurological testing to confirm or rule-out the preliminary diagnosis. *See* Exhibit A, BS 000047-8.[2]

---

[2] The Patient underwent two surgeries and other testing to treat the diabetic infection of her right foot. These medical and diagnostic procedures are not the subject of this litigation.

Exhibit 1 - page 14

On October 12, 2002, the Patient underwent electrodiagnostic nerve studies ("Nerve Study") of the upper and lower extremities. *See* Exhibit A, BS 000054-75. The results of the Nerve Study indicated changes consistent with neuropathy affecting both her upper and lower extremities (i.e. the Patient had diabetic neuropathy). Id. at BS 000056-8. The Plaintiff submitted two claims ("the Claims") for the medical services rendered with respect to the Nerve Study. Id. at BS 000052, 000145.

Approximately five months later, the Defendant denied the Claims alleging that the Nerve Study was not medically necessary. *See* Exhibit A, BS 000122, 000147. The Plaintiff requested an appeal of the denial for which a review occurred on February 10, 2003, and April 3, 2003. Id. at 00001-2, 83-7. A final review by the Defendant's board of trustees resulted in the final denial of the Claims. Id. at BS 000156. This lawsuit was instituted to recover for the medically necessary treatment rendered to the Patient.

### *Standard of Review*

Pursuant to the Plan, the Defendant's Board of Trustees is afforded the discretion to determine the eligibility for medical benefits. *See* Exhibit B, p. 52. The standard of review as to the denial of benefits is "arbitrary and capricious". Id. Under such standard, something more than an alternative result is needed to override the trustee's decision. *Boyd v. Peoria Journal Star, Inc.*, 679 N.E.2d 788 (3rd Dist. 1997). However, should it be shown that the administrator "overlooked something important or seriously erred in appreciating the significance of the evidence", the review will be found to be arbitrary and capricious and the denial of the benefits will be overturned. *Homan v. Damveld*, 533 N.E.2d 537, (3rd Dist. 1989) (*citing Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 208-09 (7th Cir. 1985)).

Exhibit 1- page 2